108 N.J. Super. 34 (1969)
259 A.2d 742
NEWARK TEACHERS ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE BOARD OF EDUCATION OF NEWARK IN THE COUNTY OF ESSEX, THE BOARD OF SCHOOL ESTIMATE OF THE NEWARK SCHOOL DISTRICT AND THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 2, 1969.
*36 Mr. Jack Mandell appeared for plaintiff (Messrs. Balk, Jacobs, Goldberger & Mandell, attorneys).
Mr. Victor A. DeFilippo appeared for defendant Board of Education.
Mr. Anthony J. Iuliani appeared for defendants Board of School Estimate and the Municipal Council (Mr. Sam *37 Weiss on the brief; Mr. Philip C. Gordon, Corporation Counsel of Newark, attorney).
MEHLER, J.S.C.
This is a motion by plaintiff for summary judgment. The essential facts are not in dispute.
Plaintiff is the duly certified bargaining agent of the teaching employees of the Newark Board of Education (board). On June 19, 1967 plaintiff and the board entered into an agreement in which they set forth the terms and conditions of employment of the teachers, including a salary schedule. The contract became effective as of February 1, 1967, and is to remain in force until February 1, 1970. Among its provisions is one which recognizes the right of plaintiff, by written request made after December 1 of each year of the contract, to negotiate with the board over all budget items concerning teachers' salaries and other related matters in the school budget for the following fiscal year. Such negotiations are to terminate, however, as between plaintiff and the board on February 1 of each year, the statutory date for submission of the budget to the board of school estimate. If these negotiations reach an impasse, either party may request the New Jersey Commissioner of Education to appoint a mediator to help the parties resolve their differences.
Newark is a type I school district (N.J.S.A. 18A:9-2). As such it has a board of school estimate consisting of two members of the board of education, appointed by it, two members of the governing body of the municipality, appointed by it, and the mayor.
The statutory plan for initiating, determining the amount of, approving and funding the annual budget of a type I district is as follows: The board of education prepares and delivers to each member of the board of school estimate, on or before February 1 in each year, a budget for the ensuing year (a school year begins on July 1 and ends on June 30) and fixes a date for a public hearing, which is to be held before the board of school estimate on published notice between *38 February 1 and February 15 next ensuing. At the hearing, taxpayers may be heard with respect to the budget and the various items and purposes for which the moneys are to be appropriated. Then, at or after the public hearing, but not later than February 15, the board of school estimate must fix and determine, by official action taken at a public meeting, the amount of money necessary to be appropriated for the ensuing school year and must make two certificates therefor, delivering one to the board of education and the other to the governing body of the municipality. Upon receipt of the certificate that body must appropriate the amount so certified and include that amount in its tax ordinance, but it is not required to appropriate any amount in excess of 1 1/2% of the assessed valuation of the ratables of the municipality. See N.J.S.A. 18A:22-7, 10, 11, 13, 15 and 17.[1]
In December 1968 plaintiff and the board began to negotiate over a demand for an increase in teachers' salaries and a revision of the salary schedule. Negotiations continued until February 1, 1969, when they were terminated as required by the contract. The board then submitted a budget of $65,000,000 for the year beginning July 1, 1969, which contemplated no change in the existing salary schedule. The *39 board of school estimate reduced the budget to $63,000,000 and certified that amount to the governing body of Newark (city). Since the certified amount exceeded 1 1/2% of the valuation of the assessed valuation of Newark's ratables and therefore was not binding on the city without its consent, the city, upon consideration of the matter, reduced the budget to $61,000,000. The cut was later restored and the city ultimately approved the budget at $63,000,000.
After the budget was adopted, plaintiff invoked the procedures of the New Jersey Employer-Employee Relations Act (N.J.S.A. 34:13A-1 et seq.), which authorizes the New Jersey State Board of Mediation, upon request of a party to a negotiation that has reached an impasse, to take steps through a designated division (in this case the Public Employment Relations Commission) to mediate the dispute and, in case of failure, to invoke fact-finding with a recommendation for settlement. A mediator and a fact-finder were successively designated and each recommended an increase in salaries and a revision of the salary schedules. On August 5, 1969 the board approved the following motion and resolution:
Whereas, the Board deems that salary increases for all its employees are both warranted and necessary for the best interests of this school district, and
Whereas, in order to implement this policy, I hereby move that the Board adopt the following salary schedules, the effective date of both this policy and salary schedules to be the date of receipt of a proper appropriation or the receipt of funds from such other sources which may be available for the implementation of this policy.
Schedule I  Single Salary Schedule for Teachers
Schedule II  Supervisory and Administrative Personnel
Schedule III  Teacher Clerks, Pianists, Laboratory Assistants
Salary Schedule for Board Assigned Substitutes
Salary Schedules for Civil Service Personnel
Resolved, that the Board of School Estimate be asked for an appropriation of $4,700,000 to implement the salary schedules.
*40 Plaintiff and the board estimate that of the amount requested, about $3,500,000 is required for teachers. The balance is for nonprofessional employees.
The board submitted the resolution and a statement of the amount of money necessary therefor to the board of school estimate, which, on August 13, 1969, rejected the request. It did not determine the amount necessary to implement the new salary schedules and hence did not certify any amount to the city.
Plaintiff commenced this action after the board informed it on September 8, 1969 that the new salary schedule would not go into effect until the city appropriated and provided funds to implement it. The complaint is in four counts. The first, which is directed against the board, seeks a judgment (a) declaring void that portion of the board's resolution which states that "the effective date of both this policy and salary schedules to be the date of a proper appropriation or the receipt of funds from such other sources which may be available for the implementation of this policy" (labelled "offensive language" by plaintiff), and (b) further declaring that the effective date of the policy and schedule was August 5, 1969, the date of their passage. The second count seeks a judgment commanding the board to pay the teachers in accordance with the salary Schedule I of August 5, 1969, a copy of which is annexed to the complaint. The third count asks for a judgment commanding the board of school estimate to fix and determine the amount necessary for the purpose contained in the board's statement and to certify this amount separately to the board and to the city. The fourth count, alleging that the sum of $4,700,000 should be considered as having been certified to the board and the city, asks that the court command the city to immediately appropriate such sum and pay it over to the custodian of school moneys of Newark in accordance with N.J.S.A. 18A:22-23.
In short, plaintiff seeks a judgment, the effect of which will provide all teachers with salaries under the new schedule beginning as of August 5, 1969, and which may also have *41 the effect of likewise providing nonprofessional personnel with increased salaries.
Plaintiff has presented its written and oral arguments in the order in which it has framed its complaint. Although plaintiff's contentions will be discussed in that order, it should be noted at the outset that a basic question in this case, which will be discussed in the latter portion of this opinion, is whether the board was empowered to require the board of school estimate to certify to the city and to require the city to raise and pay over to the board the amount of money necessary to meet increases in salaries granted by the board to all employees during a current school year, no provision for any of which had been made in the board's annual budget for that year.

I.
Boards of education may seek and receive moneys from municipalities in only two ways. The first and principal one is by means of an annual budget, the procedure for the initiation and adoption of which has already been described for a school district which has a board of school estimate. The contents of the budget of such a district are prescribed by N.J.S.A. 18A:22-8. The budget must indicate, among other things, amounts estimated to be necessary for "current expenses," which include salaries of all personnel and a miscellany of enumerated items.
The second way is prescribed by N.J.S.A. 18A:22-21 to 23, which provides for the raising of school funds during a school year additional to those set forth in the school budget for that year. Section 21 provides as follows:
When a board of education of a type I district shall determine by resolution that it is necessary to raise in any school year funds additional to those set forth in its annual budget for such year for:
(1) current expenses or repair or furnishing of buildings made necessary because the amount requisite therefor was underestimated in the budget; or
(2) repair or utilization of property destroyed or made unusable by accident or other unforeseen cause; or
*42 (3) meeting emergencies arising since the making of such budget; the board shall prepare and deliver to each member of the board of school estimate a statement of the amount of money determined to be necessary therefor.
Section 22 provides as follows:
The board of school estimate shall meet within a reasonable time after the delivery of the statement and fix and determine the amount necessary for such purpose or purposes and shall certify the same separately to the board of education and to the governing body of the municipality.
Section 23 provides as follows:
Upon receipt of the certificate, the governing body of the municipality shall immediately appropriate the sum or sums for the purpose or purposes and shall raise such sum or sums in the manner provided by law for the raising of such funds by the municipality in emergencies, and the raising of the funds required by such certificate, in such a case, shall be considered an emergency. Upon raising the funds, the governing body shall cause the sum or sums to be paid forthwith to the custodian of school moneys of the district for such purpose or purposes.
Plaintiff says that because the sequence of events for requesting, determining the amount of, and funding additional appropriations is the same as for the annual school budget, the Legislature has made it manifest that in both cases the last act to be performed in the trilogy of events is for an appropriation to take place. From this, plaintiff argues that the board, by making the new schedules effective upon the occurrence of an event precedent, namely, appropriation, which the legislative plan contemplates as the last required act, has reversed the sequence of events mandated by the Legislature and has thus acted contrary to the legislative plan.
Although the procedures of type I districts for raising moneys through annual budgets and additional appropriations appear to be the same, there are significant differences between them. In the case of an annual budget, the board of *43 school estimate whose principal function is to supervise the expenditures proposed to be incurred by the board of education, fixes and determines the amount to be expended. N.J.S.A. 18A:22-14. See also Wendel v. Board of Education, Hoboken, 76 N.J.L. 499 (E. & A. 1908). The reviewing body has the discretion to reduce the budget proposed by the board of education and acts only after a public hearing at which the taxpayers, upon notice to them have the right to be heard. The governing body of the municipality also has the right to reduce the amount certified by the board of school estimate when that amount exceeds 1 1/2% of the assessed valuation of the ratables. Both reviewing authorities may seek to effect savings that will not impair the educational process. Board of Education of East Brunswick Tp., supra, 48 N.J., at 105. As Justice Hall stated for the court in Gualano v. Board of Estimate of Elizabeth School District, supra, 39 N.J., at 305:
The legislative scheme as to appointed school boards, is, therefore, to place in a separate, intermediate body, the majority of whose members are elected officials, the determination of the amount to be raised by taxation for current school purposes and, in addition, to give a kind of veto power to the whole municipal governing body when the figure fixed by the intermediate body exceeds a certain amount.
When an additional appropriation is requested by a board of education pursuant to N.J.S.A. 18A:22-21, the board of school estimate must, as required by section 22, fix, determine and certify the amount necessary for the purpose, and the governing body must, as required by section 23, appropriate and raise the moneys so certified. If the need and circumstances come within the purview of section 21, neither body has any discretion in the matter and, moreover, the 1 1/2% limitation does not apply. See Gualano, supra, at 306, fn. 1, and Board of Education of Elizabeth v. Elizabeth, 13 N.J. 589, 593 (1953), where the court said that in such a case, if the consent of the governing body were required, "it might fatally handicap the board of education in the *44 event of disagreement between the board and the city in the event of an actual emergency."
In the case of an annual budget a board of education knows long before the start of a school year what funds are available to it for that year. However, such a board, in requesting an additional appropriation after its budget has been settled, cannot be certain that the purpose for which it seeks funds falls within the purview of N.J.S.A. 18A:22-21. If it pays out moneys from its funds for the current year without first obtaining moneys through appropriation by the municipality, and it turns out that it should not have, it is left in an untenable position, to say the least. Without a protective measure, such as the board took here, it would be in the same position in which the board of education of Elizabeth found itself when it granted all of its employees an increase for a current year, ran short of funds because of it, and was denied relief by the Supreme Court in the Elizabeth case, supra.
There, the city had consented to an annual budget for the school year beginning July 1, 1952. On May 18, 1952, within two months after the budget had been approved, the board of education by resolution decided to increase the salaries of all school employees $200 a year commencing July 1, 1952, and requested the board of school estimate to provide an additional or supplemental appropriation of $190,000. The board rejected the request. On November 13, 1952 the board of education again requested an additional appropriation, this time of $169,725, for the salary increases in the second half of the school year. This request was also rejected by the board of school estimate. Meanwhile, the board of education had been paying the salary increases since July 1, 1952. It made a third request on March 25, 1953, this time for $127,517, in which the board of school estimate acquiesced on May 29, 1953. That board then certified this amount to the city, which refused to pay it. Finding itself short of funds, the board of education sued to compel the city to raise and pay over the moneys requisitioned *45 by the board of school estimate. On appeal from a judgment in favor of the board of education, the Supreme Court set aside the requisition of the board of school estimate as not binding on the city on the ground that in the absence of an emergency, the request for funds was not authorized by and could not be made under N.J.S.A. 18A:22-21. It can thus be seen why a board of education should not act so as to place itself in the position in which the Elizabeth board found itself in the cited case.
I do not find that there is a legislative plan which disabled the board from postponing the effective date of salary raises to a date on which moneys for them were appropriated or otherwise received. Therefore, the so-called "offensive language" will not be declared void; nor may I declare that the effective date of the new schedule was August 5, 1969, unless N.J.S.A. 18A:29-4.1, upon which plaintiff also relies, ordains that a salary schedule becomes effective on the date of its adoption. A fair reading of the statute does not permit such a construction. It provides as follows:
A board of education of any district may adopt a salary policy, including salary schedules for all full-time teaching staff members which shall not be less than those required by law. Such policy and schedules shall be binding upon the adopting board and upon all future boards in the same district for a period of two years from the effective date of such policy but shall not prohibit the payment of salaries higher than those required by such policy or schedules nor the subsequent adoption of policies or schedules providing for higher salaries, increments or adjustments. Every school budget adopted, certified or approved by the board, the voters of the district, the board of school estimate, the governing body of the municipality or municipalities, or the commissioner, as the case may be, shall contain such amounts as may be necessary to fully implement such policy and schedules for that budget year.
Plaintiff argues that the term "effective date" appearing in the statute means date of adoption; that a similar thought was shared by the court in Rall v. Board of Education of Bayonne, 104 N.J. Super. 236 (App. Div. 1969). The question there presented, however, was whether the *46 board of education effectively conferred tenure on Rall, a former superintendent of schools, by a resolution attempting to accomplish that object. The statute was cited only by way of an example of legislation empowering a local board to act in regard to a particular subject matter in a manner effectual over a period of time beyond the life of the adopting board. In saying that a salary schedule binds the adopting and future boards for two years from date of adoption, the court probably did not mean to disregard the precise wording of the statute which says that a salary policy and schedules shall bind the boards for two years "from the effective date of such policy". The court's use of the word "adoption" cannot, therefore, be considered as an intentional and authoritative equation by it with the words "effective date."
The statute does not require that a new salary schedule shall go into effect on the date of its adoption. It says that the salary policy shall be binding on the board of education for two years from the effective date of the policy  not from the date of its adoption. Had the Legislature intended the latter, it could easily have so expressed itself. Opinions of the Commissioner of Education, cited by plaintiff on another aspect of the case, show that since the enactment of the statute, boards of education have been adopting salary schedules for inclusion in their budgets for the ensuing school year.

II.
It is undisputed that the annual budget submitted by the board for the school year 1969-1970 contemplated no change in the salary schedule and that the budget as approved did not contain moneys for the salary increases which were adopted in August. Plaintiff contends that the board knew that the salary negotiations which had to be terminated by February 1 would have to be resolved and that when it adopted the new schedules the board intended, in effect, to amend the current 1969-1970 budget in the "current expenses" area.
*47 There is no statutory provision permitting a board of education to amend its annual budget after it has been approved. Additional funds may be requested and appropriated only under N.J.S.A. 18A:22-21 to 23. In fact, plaintiff conceded at oral argument that it cannot prevail here unless the raises come within the purview of N.J.S.A. 18A:22-21(1).
In the case of Board of Education of Elizabeth v. Elizabeth, supra, the court held that a board of education may resort to section 21 only in the case of emergency. It held that even though a request is made under the "underestimate" clause of N.J.S.A. 18A:22-21 and not the "emergency" clause of that statute, it cannot be allowed except in case of an emergency, and that a general salary increase does not constitute an emergency, saying:
In a school case an emergency has been defined as `a sudden or unexpected occurrence or condition calling for immediate action,' * * *. In the orderly conduct of school affairs budget-making should be an annual process except for real emergencies. [at 593]
See also Gualano, supra, 39 N.J., at 306, fn. 1, where the court continued to note the distinction between the case of an emergency and that of an annual appropriation.
Plaintiff here does not say that an emergency existed on August 5, 1969. In fact, it has specifically disclaimed the existence of one. Since there is none, I am obliged by the Elizabeth case to hold that the board was precluded from endeavoring to raise moneys for the increased salaries for the current school year. Furthermore, it bound itself to pay only upon receipt of the necessary funds.
Plaintiff says that N.J.S.A. 18A:29-4.1 "binds not only proposed budgets for ensuing school years but also binds additional appropriations," citing Woodbridge Township Education Association, Inc. v. Board of Education of Woodbridge Tp., 91 N.J. Super. 54 (Ch. Div. 1966). The statute is not subject to such interpretation. It makes no reference to additional appropriations, but only to budgets *48 adopted for a budget year in the manner in which they are customarily made and approved. In Woodbridge the court merely said that boards of education may now fix salary policies and schedules separate from as well as part of annual school budgets instead of providing for salary increases only in their annual budgets as had been the custom before the statute was enacted. The court neither said nor held that, by force of the statute, schedules adopted during a current school year raise salaries for that year.
Plaintiff's final contention against the board is that by failing to honor the new salary schedule, the board has deprived the teachers of their proper salary, the effect of which constitutes a reduction in compensation in violation of the tenure statute, N.J.S.A. 18A:6-10. The claim is without merit. The failure to receive an increase in salary does not constitute a reduction in compensation. Kopera v. West Orange Board of Education, 60 N.J. Super. 288, 297 (App. Div. 1960).

III.
Plaintiff's case against the board of school estimate and the city rests on N.J.S.A. 18A:22, 23 and N.J.S.A. 18A:29-4.1. It argues that section 22 compelled that board to fix, determine and certify the amount required to meet the raises and that the degree of discretion reposed in the board by that statute was removed with respect to the pay of teachers by section 29-4.1.
When a real emergency exists section 22 requires the board of school estimate to determine the amount of money needed to meet the request of the board of education and to certify that amount to the governing body of the municipality. Where, however, as here, no emergency existed when the board approved the salary motion and adopted its resolution on August 5, 1969, the board of school estimate could not lawfully compute the total of the increases for the current school year and call on the city to raise and pay over the moneys to the board. Had it done so its requisition would *49 have had to be set aside, as was done by the court in the Elizabeth case, supra. The question finally presented is whether N.J.S.A. 18A:29-4.1 authorized and required the board to requisition the city for moneys for the current school year.
That statute does not purport to apply to, amend or modify the additional appropriation provisions of the school laws, N.J.S.A. 18A:22-21 to 23. It was evidently enacted to meet an entirely different situation. Apparently prior to the statute it was not uncommon in the give-and-take of annual budget-making for boards of education to reduce salary schedules after their adoption by the board but before final approval by the approving authorities. See e.g., Gualano and Woodbridge Township Education Association, Inc., supra, where the boards of education after encountering difficulties in obtaining approval of their proposed budgets which contained salary increases for teachers, amended their budgets by reducing the increases. I find that the purpose of the statute was to prevent such occurrences by forbidding the adopting and future boards and approving authorities from reducing teachers' salary schedules in the budget-making process.
The statute carries out this purpose by providing that a salary policy[2] and schedule adopted by a board of education shall bind it and future boards for two years, and that "[e]very school budget adopted, certified or approved by the board, the voters of the district, the board of school estimate, the governing body * * * or the commissioner, as the case may be, shall contain such amounts as may be necessary to fully implement such policy and schedules for that budget year." (Emphasis added)
Decisions of the Commissioner of Education cited by plaintiff are not pertinent and do not support its position *50 inasmuch as they involve either the interpretation of budgets or the funding of annual budgets. For example, in Board of Education of Deptford Tp. v. Deptford Tp., 67 S.L.D. 62, the Commissioner had before him an appeal from the action of the township certifying to the county board of taxation a lesser amount of an appropriation for school purposes for the 1967-68 school year than the amount proposed by the board in its budget, which was rejected twice by the voters. The board had adopted a salary schedule in December 1966 which became part of its budget for the 1967-68 school year. The Commissioner held, as the statute requires, that the salaries called for by the schedule were fixed and that the funds required for its implementation had to be provided for in the budget.
Since in my opinion the statute is not applicable to a request for an additional appropriation for nonbudgeted salary increases, it cannot be employed to compel defendant board of school estimate to certify, and defendant city to raise and pay over, moneys for salary increases for the school year 1969-70. The new schedule for teachers adopted in August 1969 will undoubtedly be given effect in the 1970-71 budget, as required by the statute.
NOTES
[1] See also Gualano v. Board of Estimate of Elizabeth School District, 39 N.J. 300, 304 (1963), where this statutory procedure is reviewed for a Chapter 6 district, now known as a type I district since the revision of Title 18.

School districts are classified as type I and type II. N.J.S.A. 18A:9-2. In a type II district which does not have a board of school estimate the proposed budget is presented to the voters at a referendum. If they reject it, and the proposal, or a revised one, is not approved at a second referendum, the municipal council, after consultation with the board of education, determines the amount to be appropriated. If it fails to do so, the Commissioner of Education makes the determination. N.J.S.A. 18A:22-32, 33, 36, 37, 38. When the amount approved by the council is considered inadequate by the board of education, its remedy is by appeal to the Commissioner of Education. Board of Education of East Brunswick Tp. v. The Township Council of East Brunswick Tp., 48 N.J. 94 (1966).
[2] "Salary policy" includes fringe benefits of employment in addition to salary schedules. Board of Education of Cliffside Park v. Mayor, etc. of Cliffside Park, 100 N.J. Super. 490, 493 (App. Div. 1968).