NEWARK TEACHERS ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THE BOARD OF EDUCATION OF NEWARK, IN THE COUNTY OF ESSEX, A CORPORATION AND GOVERNMENTAL AGENCY OF THE STATE OF NEW JERSEY; THE BOARD OF SCHOOL ESTIMATE OF THE NEWARK SCHOOL DISTRICT, IN THE COUNTY OF ESSEX, A CORPORATION AND GOVERNMENTAL AGENCY OF THE STATE OF NEW JERSEY; THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued September 29, 1970—Decided October 26, 1970.

*Mr. Jack Mandell* argued the cause for appellant (*Messrs. Balk, Jacobs, Goldberger and Mandell,* attorneys).

*Mr. Victor A. DeFilippo* argued the cause for respondent Board of Education.

*Mr. Roger Lowenstein* argued the cause for respondents Board of School Estimate and Municipal Council (*Mr. Sam Weiss,* Assistant Corporation Counsel, of counsel; *Mr. Anthony J. Iuliani,* Corporation Counsel of the City of Newark, attorney).

PER CURIAM. By resolution dated August 5, 1969 the defendant Board of Education adopted a salary schedule calling for increases in the pay of its teachers, "the effective date of both this policy and salary schedules to be

the date of receipt of a proper appropriation or the receipt of funds from such other sources which may be available for the implementation of this policy." The resolution added "that the Board of School Estimate be asked for an appropriation of $4,700,000 to implement the salary schedules." The school budget having already been adopted for the year July 1, 1969 through June 30, 1970, the resolution of August 5, 1969, if applicable to that school year, would have called for salary increases beyond the provisions of that budget.

The Board of School Estimate refused to implement the resolution of August 5, 1969 with respect to the current school year (July 1, 1969 through June 30, 1970). Thereupon plaintiff brought this action for a declaration that the new salary schedule was immediately effective with respect to that school year and for a mandatory judgment accordingly. The trial court held for the defendants, 108 N. J. Super. 34 (Law Div. 1969). We certified plaintiff's appeal before it was heard in the Appellate Division.

Plaintiff's argument involves these steps: (1) that c. 236, L. 1965, now N. J. S. A. 18A:29–4.1, under which the Board of Education adopted the resolution of August 5, 1969, required the new policy and salary schedules to be effective immediately; (2) that so much of that resolution as provides that "the effective date" of the policy and salary schedules shall be "the date of receipt of a proper appropriation or the receipt of funds from such other sources which may be available for the implementation of this policy" is "offensive" to that statutory mandate and must therefore be ignored; and (3) that the new salary schedule being operative at once, the governing body had to appropriate the additional moneys for the then school year and that the additional appropriation could be and had to be made under N. J. S. A. 18A:22–21, which deals with requests by a board of education for additional appropriations beyond those made in the annual budget.

To prevail, plaintiff must succeed in each of the three steps just stated. In our view, plaintiff cannot negotiate the first two, and hence we do not reach the third.

■ We may conveniently start with the second step. If plaintiff were correct in its claim that *c*. 236, *L*. 1965, requires a salary policy to take effect at once, it would follow that here the Board of Education did not exercise the statutory power, for the Board did not meet the responsibility of adopting a salary schedule thus operative at once. Nor could a court excise the so-called "offensive" portion of the resolution without thereby making a decision the Board alone could make. Hence, upon plaintiff's view that the statute mandates an immediate effectiveness, it would have to be said that the Board of Education failed to make the required decision and sought, without statutory authority, to transfer its responsibility to other agencies.

■ The Board of Education of course acted upon the premise that a salary schedule could be effective only with respect to an annual budget thereafter adopted. The Board thus rejected what we described above as the first step in plaintiff's case, that the statute required the resolution to be effective at once. We think the Board's view of the statute is correct both under the statute's terms as initially enacted and under the slightly different phrasing in the revision of the statute in *N. J. S. A.* 18A :29–4.1.

The 1965 statute (*c*. 236), as originally enacted, read:

1. A board of education of any school district may adopt a salary policy, including salary schedules for all teachers which shall not be less than those required by law. Such policy and schedules shall be binding upon the adopting board of education and upon all future boards of education in the same district for a period of 2 years from the effective date of such policy but shall not prohibit the payment of salaries higher than those required by such policy or schedules nor the subsequent adoption of policies or schedules providing for higher salaries, increments or adjustments. Every school budget *thereafter* adopted, certified or approved by the board of education, the voters of the school district, the board of school estimate, the governing body of the municipality or municipalities, or the Commissioner of Education, as the case may be, shall contain such amounts as may be necessary to fully implement such policy and schedules for that budget year. (Emphasis is ours.)

The second sentence of section 1 expressly binds the adopting board of education and future boards of education for a two-year period but that sentence speaks only of the board of education. It is the third sentence which deals with the impact of a resolution by a board of education upon the voters, the board of school estimate, the governing body of the municipality, and Commissioner of Education, and as to them the third sentence explicitly refers to budgets "thereafter" adopted.

Thus the theme of the act was that a new policy or schedule shall not upset a budget already adopted. In this regard, the Statement annexed to the bill went no further than to say:

> * * * Every school *budget thereafter* adopted, certified or approved by the board of education, the voters of the district, the board of school estimate, the governing body of the municipality or the Commissioner of Education, as the case may be, shall contain the amounts necessary to implement such policy and schedules. * * * (Emphasis is ours.)

The Statement continued:

> State, county and municipal employees in New Jersey are assured of receiving their salary improvements once the governing bodies agree to such salary revisions. Funds are then budgeted and the promised amounts paid. Teachers and other school employees have no such assurance under present school laws. Salary policies may be adopted by boards of education extending over one or more years but necessary funds to implement such schedules may be cut from the budget. This bill would give school employees the same status now enjoyed by all other public employees in New Jersey. * * *

Thus the Statement proceeded on the theme that the time sequence would be (1) the adoption of a resolution by the board of education, followed by (2) the incorporation of the salary needs in a budget thereafter adopted.[1]

---

[1]Following oral argument, plaintiff submitted to us literature circulated by the New Jersey Education Association advocating the adoption of the 1965 statute. We find therein no suggestion that a schedule adopted by a board of education will be effective with respect to a school year within which the new schedule is adopted.

We italicized the word "thereafter" in section 1 of the 1965 act. That word was omitted when the section became a part of the revision of Title 18 (*c.* 271, *L.* 1967, effective January 11, 1968) as *N. J. S. A.* 18A:29–4.1. We have been unable to find a stated explanation why that word was dropped. But there is no reason to assume a substantive change was intended. The revision itself contains in *N. J. S. A.* 18A:76–1 the usual proposition (see *R. S.* 1:1–4) that "this law is a revision law and the provisions hereof, not

Rather, the purpose revealed was to supersede the power of the voters or of the board of school estimate, as the case may be (see note 2, *infra*), to reject a budget request as to salaries. Thus in the Association's statement to the members of the Assembly dated May 17, 1965, its Executive Secretary said:

"At the present time teachers enter into agreements with boards of education with no assurance that the boards will be able to live up to such agreements because of subsequent voter (article 7) or council (article 6) action upon the school budget. This bill provides that a board of education which adopts a salary program affecting its employees will be entirely responsible for the salary portion of the budget for a period not to exceed two years.

Teachers should have the right to deal with a responsible party when they make salary agreements. The present situation does not permit this and leads to involuntary violations of such agreements by some boards of education.

The important concept outlined here for the salary portion of the budget is the same as that which now prevails for the entire budgets of counties and municipalities. Salaries are set and assured by actions of the employing governmental body. What we ask for here is less than that which prevails for all other governing bodies."

At the time he signed the 1965 bill, the Governor issued a press release dated February 15, 1966, which read:

"The Governor has indicated that he has approved the measure in its present form with the understanding that the New Jersey Education Association, which has advocated this measure, will support amendments which will permit such salary policies to be for a period of also one year and which will clarify the times at which such salary policies can be adopted. This legislation will be applicable to school budgets adopted hereafter."

We are not sure of the precise difficulty the Governor had in mind. In any event, the Governor did not suggest a new schedule would override a budget already adopted.

inconsistent with prior laws, shall be construed as a continuation of such prior laws * * *." The publishers' Foreword tells us:

> The object of the Revision was to resolve inconsistencies, eliminate overlapping provisions, and to make such changes in the substantive law as were necessary to achieve consistency, and conformity with current practices.

It cannot be said the Legislature here sought "to achieve consistency," or "conformity with current practices." We are not aware of any practice under the 1965 act which accorded immediate dollar effect to a resolution of a board of education adopted under that act. The likely explanation is that the reviser thought the word "thereafter" was redundant because under the terms of the statute the implementing budget would necessarily be adopted after the adoption of a new policy and schedule by a board of education.

For these reasons we are satisfied that the judgment must be affirmed.

This litigation involves only the school year 1969-1970. We are told that the budget for the following school year abided by the new schedule. That being so, there is not before us the question whether the salary item covered by the resolution of a board of education was binding upon the board of school estimate and the governing body of the city with respect to budgets adopted within two years after the resolution of the board of education. Defendants ask that we leave that question open. Not being involved, that question is not concluded by this opinion. Nonetheless it is evident from what we have said in dealing with the issue presented in this case that we gather the statute was intended to mean that the employees shall not be denied the promise of a new schedule adopted by a board of education. Thus to enable the board of education to have the final word does depart from the historic statutory plan,[2] but that seems to be the thrust of the measure. We state this tentative view to the

end that the Legislature may quickly clarify its intent if we have misconceived it.

The judgment is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.

---

[2]*N. J. S. A.* 18A:22–14, which relates to Type I districts (the City of Newark is such a district), empowers the board of school estimate to revise the budget requests of the board of education, and although *N. J. S. A.* 18A:22–15 requires the governing body of the municipality to appropriate the sums thus certified, that mandate is qualified by *N. J. S. A.* 18A:22–17 which provides that the governing body may but need not appropriate any sum in excess of $1\frac{1}{2}\%$ of the assessed valuation of the ratables of the municipality. With respect to Type II districts which have a board of school estimate, that board has the authority to fix and determine the moneys needed by the district, see *N. J. S. A.* 18A:22–26, and in Type II districts which do not have a board of school estimate, the budget request of the board of education is submitted to the voters for approval, *N. J. S. A.* 18A:22–23 *et seq.*