**156**

517 P.2d 114

STATE BOARD OF HEALTH, Ben T. Dibble, Chairman, A. V. Dudley, Jr., Wm. E. Naumann, C. H. Fredell and Mrs. Ormiston T. Ellis, Members, Arthur Aymar, Director of the Division of Air Pollution Control, State Department of Health, State Air Pollution Control Hearing Board, Louis R. Jurwitz, Chairman, Sidney B. Wolfe, J. August Rau, Mary Louise Baird and Bradie Hopper, Members, Appellants,

v.

APACHE POWDER COMPANY, a corporation, Appellee.

No. 1 CA–CIV 2338.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 28, 1973.

Gary K. Nelson, Atty. Gen., by Patrick W. Murphy, Asst. Atty. Gen., for appellants.

Evans, Kitchel & Jenckes, by Harold J. Bliss, Jr., Phoenix, for appellees.

## OPINION

STEVENS, Judge.

This appeal presents one question for review:

When the State Board of Health gives its approval to the State Director of the Division of Air Pollution Control to assert State jurisdiction and control over a particular air pollution source pursuant to A.R.S. § 36–1706(B) as amended 1971, must it give prior notice of such contemplated action and give an opportunity to be heard pursuant to the Administrative Procedure Act, specifically A.R.S. §§ 41–1001.2, 41–1009, 41–1010 and 41–1011?

The facts leading to the complaint in the trial court show that some time prior to 3 March 1972 a letter was sent to the Cochise County Health Department by the State Department of Air Pollution Control requesting assistance in collecting certain data on noxious gases being emitted from the Apache Powder Company in Cochise County. On 3 March 1972 Mr. Lonnie D. Bright, acting director of the Cochise County Health Services responded by a written request that the State Department of Air Pollution Control assume all emission studies and control over the Apache Powder Company because of the lack of equipment or trained personnel in the Cochise County Health Department to carry out the tests. Thereafter, the State Director of Air Pollution Control sought approval from the State Board of Health for the State to assert jurisdiction in all air pollution matters over Apache Powder Company.

This was placed on the agenda for the meeting of the State Board of Health to be held 20 April 1972 in Tempe, Arizona. It

was set for public hearing and copies of the agenda were mailed to the people listed on the "Distribution of Board of Health Agendas." No notice was given personally to Apache Powder, nor was the agenda published in any newspaper.

During the public meeting on 20 April 1972 the State Board of Health adopted a resolution giving its approval. The minutes of the meeting reflect the following:

"* * * Doctor Dudley moved, 'that the State Board of Health, pursuant to ARS 36–1706.B, give its approval to the Director of the Division of Air Pollution Control to designate the Apache Powder Company, located at St. David in Cochise County, Arizona, as an air pollution source within the jurisdiction and control of the State Division of Air Pollution Control.' The motion was seconded by Doctor Fredell and unanimously passed by the Board. * * *."

By letter dated 31 October 1972 Apache Powder was notified of the resolution and the intent of the State Director to assert jurisdiction over Apache Powder Company. However, prior to this written notice, Apache Powder informally learned of the actions and on 31 August 1972 petitioned the State Air Pollution Control Hearing Board for a conditional operating permit and at the same time filed a protest of the 20 April 1972 resolution. These actions were taken without waiving its objection to State jurisdiction. The State Board of Health refused to reconsider its 20 April 1972 action and the Hearing Board scheduled a hearing for 28 November 1972 on Apache's petition for the issuance of a conditional operating permit.

On 20 November 1972 Apache Powder then filed a complaint for special action, requesting that the resolution of 20 April 1972 be declared null and void and that the Hearing Board be enjoined from proceeding with the hearing on the conditional operating permit scheduled for 28 November 1972 and from exercising any further jurisdiction over Apache Powder.

No contention was made that Apache Powder was not a pollution source. In fact, paragraph 3 in Count I of Apache Powder's complaint alleged that its plant generated two and one-half tons per day of oxides of nitrogen. Its theory for relief was that because its plant was incapable of generating the 75-ton minimum of air contaminants per day which would bring it within the original jurisdiction of the State as a major source of air pollution as defined in A.R.S. § 36–1706(A) and State Board of Health Regulations Section 7–1–7, it was denied due process of law by not receiving prior notice pursuant to the Administrative Procedure Act of the 20 April 1972 action. Its argument presumed the premise that it had a right to be solely within the jurisdiction and control of the Cochise County Health Department which right was protected by due process of law.

The trial court agreed with Apache Powder's argument and found the 20 April 1972 resolution to be void. We must disagree.

A.R.S. § 36–1700(A), laws 1970, establishes the Legislature's declaration of policy as to air pollution control:

"The legislature finds and declares that air pollution exists with varying degrees of severity within the state, such air pollution is potentially and in some cases actually dangerous to the health of the citizenry, often causes physical discomfort, injury to property and property values, discourages recreational and other uses of the state's resources and is esthetically unappealing. The legislature by this act intends to exercise the police power of this state in a coordinated state-wide program to control present and future sources of emission of air contaminants to the end that air polluting activities of every type shall be regulated in a manner that insures the health, safety and general welfare of all of the citizens of the state; protects property values and protects plant and animal life. *The legislature further intends to place primary responsibility for air pollution control and abatement in the state department of health and the hearing board created thereunder. However,*

counties shall have the right to control local air pollution problems as specifically provided herein." (Emphasis added).

A.R.S. § 36–1706(B), as amended 1970, then defines the limits of county jurisdiction:

"Except as specified in subsection A of this section, jurisdiction and control of air pollution shall be by the county or multi-county air quality control region pursuant to the provisions of article 8, chapter 6, of this title. *The county or multi-county air quality control region shall relinquish jurisdiction and control over such air pollution matters, air pollution sources, installation permits, operating permits, conditional permits and violations as the director of the division, with the prior approval of the state board of health given at a public meeting, designates and at such times as he asserts jurisdiction and control at the state level.* The order of the director which asserts state jurisdiction and control shall specify the matters, geographical area, or air pollution source or sources over which the division shall exercise jurisdiction and control. *Such state authority shall then be the sole and exclusive jurisdiction and control to the extent asserted and the provisions of this chapter, shall govern, except as provided in this chapter, until jurisdiction and control is surrendered by the division of such county or region.*" (Emphasis added).

These statutes are clear as to the Legislature's intent to delegate primary responsibility for control and abatement of air pollution matters at the State agency level. Although the counties are delegated jurisdiction over what may be categorized as air pollution sources of primarily county concern, their jurisdiction over designated geographical areas or particular sources is always subject to mandatory relinquishment to the State agency at the discretion of the Director of the Division of Air Pollution Control, with the prior approval of the State Board of Health, given at a public meeting.

■ Unlike a quasi-judicial decision as argued by Apache Powder, the approval by the State Board of Health is merely an internal official deliberation and proceeding demanded to be conducted openly under A.R.S. § 38–431.01.

Apache Powder's argument is analogous to that presented by the defendant in State v. Arizona Mines Supply Co., 107 Ariz. 199, 484 P.2d 619 (1971). There, an information was filed against defendant charging two counts of air pollution pursuant to A.R.S. § 36–789.01. Under A.R.S. § 36–781, the County Control Officer was given authority to act against air pollution violators by issuing an order of abatement, or filing a complaint alleging violation pursuant to § 36–789.01, or both. It was argued that the information was wrongfully and prematurely filed in that no notice or administrative hearing was given to the defendant prior to any independent judicial action being taken. The Arizona Supreme Court rejected this argument, stating:

"The fact that the Legislature saw fit to grant [the control officer] the choice of utilizing his discretion as to which procedure to follow does not thereby render this act invalid." 107 Ariz. at 203, 484 P.2d at 623.

■ We view the case at bar in the same light. When the Legislature has granted an administrative agency authority to perform a discretionary act and the agency exercises that discretion, it is acting in an administrative and not judicial manner. FPC v. Idaho Power Co., 344 U.S. 17, 73 S.Ct. 85, 97 L.Ed. 15, reh. den. 344 U.S. 910, 73 S.Ct. 326, 97 L.Ed. 702 (1952). The decision to assert jurisdiction over a local pollution source pursuant to A.R.S. § 36–1706(B) being strictly an internal administrative decision between the State Director of Air Pollution Control and the State Board of Health, there is no "right" vested in Apache Powder Company to be within the jurisdiction of county control which demands administrative due process prior to its relinquishment.

Reversed.

DONOFRIO, P. J., and OGG, J., concur.